UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

MOSES NELSON,                       :
                                    :
                Plaintiff,          :        17-cv-4045 (LAP)
                                    :
     -against-                      :
                                    :        MEMORANDUM & ORDER
                                    :
WELLS FARGO BANK, N.A., U.S. Bank,  :
N.A., AS TRUSTEE FOR BANK OF        :
AMERICA FUNDING 2007-1 TRUST,       :
                                    :
                Defendants.         :
                                    :
------------------------------------x

LORETTA A. PRESKA, Senior United States District Judge:

     Before the Court are Plaintiff Moses Nelson's ("Plaintiff"
or "Nelson") Motion to Strike Defendant(s) Reply Memorandum
Pursuant to FRCP Rule 9(b) and 12(f) ("Plaintiff's Motion"),
dated Nov. 6, 2018 [dkt. no. 40] and Defendants Wells Fargo
Bank, N.A. ("Wells Fargo") and U.S. Bank, N.A., as Trustee for
Bank of America Funding 2007-1 Trust's ("U.S. Bank")
(collectively, "Defendants") Motion to Dismiss for Improper
Venue, or in the Alternative to Transfer ("Defendants' Motion"),
dated Aug. 30, 2019 [dkt. no. 33].

     For the reasons stated below, Plaintiff's Motion [dkt. no.
40] is denied and Defendants' Motion [dkt. no. 33] is granted.
Because venue is improper in this District, and because it is

1

"in the interest of justice" to do so, this action is transferred to the District of Connecticut.

## I. BACKGROUND

### A. History of Litigation Between the Parties Regarding the Property

In September of 2013, U.S. Bank commenced a foreclosure action against Nelson, "styled U.S. Bank N.A. as Trustee v. Nelson, Moses, et al., Docket No. FBT-CV13-6038082-S (Conn. Super. Ct.)" in the State of Connecticut Superior Court, Judicial District of Fairfield at Bridgeport ("Connecticut Superior Court"). (Memorandum of Law in Support of Defendants' Motion to Dismiss for Improper Venue, or in the Alternative to Transfer ("Defs.' Mot. Mem."), dated Aug. 30, 2018 [dkt. no. 34], 2; see Declaration of William Lugo in Support of Defendants' Motion to Dismiss for Improper Venue, or in the Alternative to Transfer ("Lugo Decl."), dated Aug. 30, 2018 [dkt. no. 35], 4-8 (Exhibit A).) U.S. Bank sought to foreclose Nelson's property known as 1584-1586 North Avenue, Bridgeport, Connecticut (the "Property").[1] (Id. at 9-16 (Exhibit B).)

---

[1] In the Amended Complaint, Nelson alleges that the Property is located at "1584-86 North Avenue, Bridgeport, Connecticut, 06604" and "1584-1586 North Avenue Bridgeport, CT 06604." (See Amended Complaint ("Am. Compl."), dated Aug. 2, 2018 [dkt. no. 25], ¶ 5; Exhibit A to Am. Compl. (emphasis added).) Although the street numbers are slightly different, the Court construes them as denoting the same piece of property (continued)

On June 29, 2015, U.S. Bank obtained a Judgment of Strict Foreclosure (the "Foreclosure Judgment"). (Id. at 17-19 (Exhibit C).)  The Foreclosure Judgment set "[a] law day [of] August 18, 2015 for" Nelson, "the owner of the equity of redemption with the law days of the subsequent encumbrances assigned in the inverse order of priorities." (Id. at 18 (Exhibit C).)

On August 18, 2015, Nelson filed a "Motion to Open Judgment (Civil Matters Other Than Small Claims and Housing Matters)" (the "2015 Motion to Open Judgment"), claiming that he had released his attorney from representing him and had just learned about his law day. (Id. at 20-22 (Exhibit D).)  On September 3, 2015, U.S. Bank filed an objection to Nelson's 2015 Motion to Open Judgment, in which it asserted that, because title to the Property vested in U.S. Bank on August 20, 2015, the Connecticut Superior Court did not have authority to open the Foreclosure Judgment at Nelson's request. (Id. at 23-26 (Exhibit E).)  On September 21, 2015, the Connecticut Superior Court dismissed Nelson's 2015 Motion to Open Judgment for lack of jurisdiction. (Id. at 27-28 (Exhibit F).)

---

(continued) on North Avenue (defined above as the "Property" for purposes of this Memorandum & Order).

On September 30, 2015, Nelson filed a "Motion for Waiver and Subject Matter Jurisdiction" requesting that the Connecticut Superior Court "[v]acate and [v]oid" the Foreclosure Judgment and claiming that he could "unequivocally prove that the Original Lender, AMERICAN BROKERS CONDUIT, did not exist as a legitimate Corporation to do business in the State of Connecticut when they contracted with" him "to create the Mortgage and Promissory Note" (the "Mortgage Loan") for the Property.  (Id. at 31-57 (Exhibit H).)  On November 18, 2015, the Connecticut Superior Court denied Nelson's motion.  (Id. at 58-59 (Exhibit I).)

On December 1, 2015, Nelson filed an appeal.  (Id. at 7 (Exhibit A).)  On May 9, 2017, the Connecticut Appellate Court issued a per curiam opinion affirming the Foreclosure Judgment.  (Id. at 60-61 (Exhibit J).)

On May 10, 2017, Nelson filed a petition for certification to the Connecticut Supreme Court.  (Id. at 62-96 (Exhibit K).)  On June 14, 2017, the Connecticut Supreme Court denied Nelson's petition.  (Id. at 97-98 (Exhibit L).)

Meanwhile, on September 12, 2014, Nelson filed an action against American Broker's Conduit, Stewart Title Guaranty Company, Mortgage Electronic Registration Systems, Inc. ("MERS"), and U.S. Bank (collectively, the "2014 Connecticut

4

Superior Court Defendants"), "styled <u>Nelson v. American Brokers
Conduit, et al.</u>, Docket No. FBT-CV14-5030232-S (Conn. Super.
Ct.)" in the Connecticut Superior Court.  (Defs.' Mot. Mem. at
3; <u>See</u> Lugo Decl. at 99-103 (Exhibit M).)  In his "Complaint for
Quiet Title," dated July 11, 2014, Nelson sought to sue the 2014
Connecticut Superior Court Defendants for allegedly engaging in
"Unfair Business Practices," "misrepresentation, misconduct and
fraud" and receiving "Unjust Enrichment" through their alleged
actions regarding the Mortgage Loan.  (Lugo Decl. at 104-129
(Exhibit N).)  The 2014 Connecticut Superior Court Defendants
filed motions to dismiss the action, (<u>see id.</u> at 101-102
(Exhibit M)), and on March 30, 2017, the Connecticut Superior
Court entered a judgment of dismissal.  (<u>Id.</u> at 130-131 (Exhibit
O).)

On April 3, 2018, Nelson filed a "Motion to Open Judgment
(Civil Matters Other Than Small Claims and Housing Matters)"
(the "2018 Motion to Open Judgment"), claiming that he had
"proof that the Defendant does not have an equitable claim to my
property because they did not exist as a lawful corporation to
do business in Connecticut or New York."  (<u>Id.</u> at 132-140
(Exhibit P).)  On April 19, 2018, U.S. Bank and MERS filed an
objection to Nelson's 2018 Motion to Open Judgment.  (<u>Id.</u> at
141-149 (Exhibit Q).)  On May 9, 2018, the Connecticut Superior
Court denied Nelson's 2018 Motion to Open Judgment.  (<u>Id.</u> at

150-151 (Exhibit R).)  Nelson did not appeal.  (See id. at 102
(Exhibit M).)

On August 19, 2015, Nelson filed a federal lawsuit against
American Brokers Conduit, MERS, U.S. Bank, and Bendett & McHugh,
P.C. (collectively, the "2015 District of Connecticut
Defendants") in the United States District Court for the
District of Connecticut.  See Nelson v. American Brokers Conduit
et al., No. 15-CV-1233(JAM) (D. Conn.).  In his Complaint,
Nelson alleged that the 2015 District of Connecticut Defendants
were liable for violating his civil and constitutional rights
and for wrongful foreclosure, fraudulent concealment, fraud in
the inducement, fraud upon the court, mail fraud, abuse of
process, and obstruction of justice.  (Verified Complaint ("2015
District of Connecticut Complaint"), Nelson v. American Brokers
Conduit, No. 15-CV-1233(JAM) (D. Conn.), dated Aug. 19, 2015
[dkt. no. 1], ¶¶ 82-146.)  Nelson further alleged that the
material facts related to the securitization of the Mortgage
Loan were not disclosed to him.  (Id. ¶¶ 15, 18, 38, 39, 50.)
Nelson also claimed that the Mortgage Loan was void because the
original mortgagee was MERS and not the original lender.  (Id.
¶¶ 14, 16, 17, 25, 28, 29, 52.)

On April 19, 2016, Nelson filed a "Motion to Withdraw
Verified Complaint" in which he moved to withdraw his 2015

District of Connecticut Complaint "without prejudice, until I am able to retain an attorney to represent me." (Motion to Withdraw Verified Complaint ("2015 District of Connecticut Withdraw Motion"), Nelson v. American Brokers Conduit, No. 15-CV-1233(JAM) (D. Conn.), dated Apr. 19, 2016 [dkt. no. 28], 1.) On April 20, 2016, the District Court of Connecticut granted Nelson's 2015 District of Connecticut Withdraw Motion. (Order, Nelson v. American Brokers Conduit, No. 15-CV-1233(JAM) (D. Conn.), dated Apr. 20, 2016 [dkt. no. 29].)

On June 9, 2016, Nelson filed a federal lawsuit against Wells Fargo, U.S. Bank, and 1-100 John Does (collectively, the "2016 Southern District of New York Defendants") in this Court. See Nelson v. Wells Fargo Bank, N.A., et al., No. 16-cv-4300 (LAP) (S.D.N.Y.). In his Complaint, Nelson alleged that American Brokers Conduit had underwritten the Mortgage Loan "without proper due diligence" and that U.S. Bank and Wells Fargo engaged in unfair and deceptive business practices by failing to grant him a loan modification. (Complaint ("2016 Southern District of New York Complaint"), Nelson v. Wells Fargo Bank, N.A., et al., No. 16-cv-4300 (LAP) (S.D.N.Y.), dated June 9, 2016 [dkt. no. 1], ¶¶ 8, 9.) Nelson also alleged that U.S. Bank failed to comply with New York trust laws regarding the acquisition, servicing, and transfer of the Mortgage Loan. (Id. ¶¶ 24-35).

7

On July 12, 2016, this Court issued to Nelson an Order to Show Cause as to why the action should not be transferred to the District of Connecticut.  (Order to Show Cause ("July 2016 Order to Show Cause"), Nelson v. Wells Fargo Bank, N.A., et al., No. 16-cv-4300 (LAP) (S.D.N.Y.), dated July 12, 2016 [dkt. no. 4].)  The July 2016 Order to Show Cause stated, in part:

> the Court is inclined to transfer this case to the United States District Court for the District of Connecticut under 28 U.S.C. § 1404(a). [Nelson] is therefore directed to submit a brief statement addressing why this action should not be transferred to the United States District Court for the District of Connecticut . . . . [The 2016 Southern District of New York] Defendants may, within thirty days, submit statements addressing the question of venue for this action. If [Nelson] fails to respond within thirty days, the Court will transfer this matter to the District of Connecticut pursuant to § 1404(a).

(Id. at 3.)

On August 10, 2016, the 2016 Southern District of New York Defendants submitted a statement pursuant to this Court's invitation.  (Letter, Nelson v. Wells Fargo Bank, N.A., et al., No. 16-cv-4300 (LAP) (S.D.N.Y.), dated Aug. 10, 2016 [dkt. no. 9].)  Nelson failed to respond to the July 2016 Order to Show Cause.

On September 30, 2016, this Court issued a second Order to Show Cause to Nelson directing him to submit a "brief statement addressing why this action should not be dismissed and why this action should not be transferred to the District of

Connecticut." (Order to Show Cause ("September 2016 Order to Show Cause"), <u>Nelson v. Wells Fargo Bank, N.A., et al.</u>, No. 16-cv-4300 (LAP) (S.D.N.Y.), dated Sept. 30, 2016 [dkt. no. 10].) Nelson failed to respond to the September 2016 Order to Show Cause. Instead, on March 3, 2017, Nelson filed a "Motion to Withdraw Verified Complaint" in which he moved to withdraw his 2016 Southern District of New York Complaint "without prejudice, until I am able to retain an Attorney to represent me." (Motion to Withdraw Verified Complaint ("2016 Southern District of New York Withdraw Motion"), <u>Nelson v. Wells Fargo Bank, N.A., et al.</u>, No. 16-cv-4300 (LAP) (S.D.N.Y.), dated Mar. 3, 2017 [dkt. no. 11].) On March 10, 2017, this Court granted Nelson's 2016 Southern District of New York Withdraw Motion. (Memo Endorsement, <u>Nelson v. Wells Fargo Bank, N.A., et al.</u>, No. 16-cv-4300 (LAP) (S.D.N.Y.), dated Mar. 10, 2017 [dkt. no. 12].)

## B. The Instant Action

On or about May 9, 2017, Nelson (from here, the "Plaintiff") filed this action, originally in the State of New York Supreme Court, County of Bronx. (Notice of Removal, dated May 31, 2017 [dkt. no. 5].) On May 31, 2017, Defendants removed the instant action to this Court. (<u>Id.</u>) Plaintiff filed his Amended Complaint on August 2, 2018. (<u>See</u> Am. Compl.)

In the Amended Complaint, Plaintiff alleges that Wells Fargo is the "Sponsor/Seller" and "purported 'Depositor'" for the "BANC OF AMERICA FUNDING 2007-1 TRUST" (the "Trust") as well as a "National Banking Association," "Non Depository Payor Bank," and "account debtor of the instant matter." (Id. ¶¶ 6, 8, 11). Plaintiff further alleges that Wells Fargo "was acting in the capacity of a qualified intermediary for credit swap conveyances" and is the "servicer" and "Junior Secured Party" for the Mortgage Loan. (Id. ¶¶ 11, 13.) Plaintiff alleges that U.S. Bank is a "National Banking Association" and "Trustee" for the Trust. (Id. ¶ 12.) Plaintiff alleges that "Defendants are residents of and/or conduct business in this District." (Id. ¶ 3.)

According to the Amended Complaint, Plaintiff "is now, and at all times relevant to this action" a resident of Connecticut. (Id. ¶ 4). The Property is located at 1584-86 North Avenue, Bridgeport, Connecticut, 06604. (Id. ¶ 5).

Plaintiff "disputes the Defendant's [sic] superior colorable claim to legal title and equitable title of" the Property, (id. ¶ 20), and "affirmatively alleges that the purported 'loan' to Plaintiff was fraudulently induced [sic] transaction with the purported Original Lender, AMERICAN BROKERS CONDUIT CORPORATION, without full and proper disclosure," (id.

¶ 21).  Plaintiff alleges that he "has recently discovered the nature of the true substance and intent of the purported Mortgage transaction with the purported Original Lender," claiming that its "purpose and intent . . . was to convert Plaintiff's Mortgage and Promissory Note from a non-negotiable instrument governed under Article 3 of the U.C.C. into a Stock-like Bond Certificate or investment Security Instrument to be placed into a Mortgage Backed Securities Investment Trust that is governed under Article 8 of the U.C.C. without Plaintiff's informed knowledge and consent."  (Id. ¶ 24.)

In addition, Plaintiff claims that Defendants "fraudulently converted [his] Promissory Note from a 'promise to pay', governed under U.C.C. 3 § 104(e) into an 'order to pay', governed under U.C.C. 3 § 104(f), and then ledgered [sic] it into an account as a 'cash item' asset" to permit it to be securitized and sold.  (Id. ¶ 26.)  Plaintiff asserts that his claims "relate to Federal Housing Administration's role as Trustee over a trust created under New York law and/or administered at least in part in New York," (id. ¶ 3), that "this case involves New York Common Law Trusts," (id. ¶ 1), and that Defendants have violated New York laws, including "New York trust law" and "New York Securities Law," (id. ¶¶ 53, 58(h), 86(F)).

Plaintiff seeks relief from wrongful foreclosure (First Cause of Action), (id. ¶¶ 87-109), fraud in the concealment against Wells Fargo and U.S. Bank (Second Cause of Action), (id. ¶¶ 110-121), fraud in the inducement (Third Cause of Action), (id. ¶¶ 122-130), unconscionable contract against Wells Fargo (Fourth Cause of Action), (id. ¶¶ 131-138), breach of contract against Wells Fargo (Fifth Cause of Action), (id. ¶¶ 139-143), breach of fiduciary duty (Sixth Cause of Action), (id. ¶¶ 144-149), quiet title (Seventh Cause of Action), (id. ¶¶ 150-156), slander of title (Eighth Cause of Action), (id. ¶¶ 157-164), declaratory judgment relief to quiet title and declare Plaintiff to be the equitable owner of the Property (Ninth Cause of Action), (id. ¶¶ 165-169), "National Homeowner Bill of Rights ('HBOR')"[2] (Tenth Cause of Action), (id. ¶¶ 170-174), "CCPA," which Plaintiff alleges is a violation of 15 U.S.C. § 1461(g)[3] (Eleventh Cause of Action), (id. ¶¶ 175-177), and Violation of

---

[2] "This is an apparent reference to H.R. 4963, 113th Cong. (2014), a bill introduced by New Mexico Congresswoman Michelle Lujan Grisham. However, this bill was never voted on, let alone enacted into law. Accordingly, [Plaintiff's] claim[] under the bill [is] dismissed" outright. Lopez v. Bayview Loan Servicing, LLC, No. 16-CV-2610 (JPO), 2017 WL 3396421, at *7 (S.D.N.Y. Aug. 8, 2017) (citing H.R. 4963—
National Homeowners Bill of Rights Act of 2014,
https://www.congress.gov/bill/113th-congress/house-bill/4963/text (last visited June 6, 2019)).
[3] This cause of action quotes what is purportedly language from 15 U.S.C. §1461(g) about obligations to inform affected debtors when a mortgage loan is sold, but nothing like the quoted language actually appears in 15 U.S.C. § 1461.

Regulation X, 12 C.F.R. § 1024.41(b)(2)(i)(A) by allegedly
failing to review a loss mitigation/loan modification
application (Twelfth Cause of Action), (id. ¶¶ 178-189).

Ultimately, Plaintiff seeks a judgment that, in part,
"[d]eclar[es] that Defendants lack any interest in the subject
property which would permit them to foreclose, evict, or attempt
to foreclose or evict, the trust deed and/or to sell" the
Property. (Id. at 49.) Plaintiff claims that "[v]enue is
proper in this District under 28 U.S.C. § 1391(b)(1), because
Defendants are residents of and/or conduct business in this
District [and his] claims also relate to Federal Housing
Administration's role as Trustee over a trust created under New
York law and/or administered at least in part in New York."
(Id. ¶ 3.)

On August 30, 2018, Defendants moved to dismiss the Amended
Complaint for improper venue pursuant to Federal Rule of Civil
Procedure 12(b)(3) and 28 U.S.C. § 1406(a) or, in the
alternative, to transfer this case to the District of
Connecticut pursuant to 28 U.S.C. § 1404(a). (See Defendants'
Motion at 1.) Defendants filed a memorandum of law and
declaration in support of Defendants' Motion. (See Defs.' Mot.
Mem.; Lugo Decl.) On October 10, 2018, Plaintiff filed his
opposition to Defendants' Motion. (See Motion in Opposition to

Defendant's Motion to Dismiss for Improper Venue, or in the
Alternative to Transfer ("Defs.' Mot. Opp."), dated Oct. 10,
2018 [dkt. no. 38].)  On October 17, 2018, Defendants filed
their reply.  (See Reply Memorandum of Law in Support of
Defendants' Motion to Dismiss for Improper Venue, or in the
Alternative to Transfer ("Defs.' Mot. Reply"), dated Oct. 17,
2018 [dkt. no. 39].)

On November 6, 2018, Plaintiff filed Plaintiff's Motion
asking the Court to strike Defendants' Motion as well as
Defendants' memorandum of law and reply in support of
Defendants' Motion pursuant to Federal Rules of Civil Procedure
9(b) and 12(f).[4]  Plaintiff filed his memorandum of law in
support of Plaintiff's Motion on the same day.  (See Pl.'s Mot.
Mem.)  On November 15, 2018, Defendants filed their opposition
to Plaintiff's Motion.  (See Opposition to Motion to Strike

---

[4] Although Plaintiff entitled Plaintiff's Motion, "Motion to
Strike Defendant(s) Reply Memorandum Pursuant to FRCP Rule 9(b)
and 12(f)," in it, he requests that the Court "strik[e] the
Defendant's Reply Memorandum, Motion to Dismiss for Improper
Venue and in the alternative to transfer this action to
Connecticut." (Plaintiff's Motion at 3; see also Memorandum of
Law in Support of Motion to Strike Pursuant to FRCP Rule 9(b)
and 12(f) ("Pl.'s Mot. Mem."), dated Nov. 6, 2018 [dkt. no. 41],
1, 3 (requesting that the Court "strik[e] said Motions and
pleadings," which he earlier identified as "[t]he Reply
Memorandum and Motion to Dismiss").)  Accordingly, the Court
construes Plaintiff's Motion as seeking to strike Defendants'
Motion as well as Defendants' memorandum of law and reply in
support of Defendants' Motion.

Defendant(s) Reply Memorandum Pursuant to FRCP 9(b) and 12(f), dated Nov. 15, 2018 [dkt. no. 42].)

The Court addresses the parties' motions in turn.

## II. <u>PLAINTIFF'S MOTION</u>

### A. Legal Standard

Plaintiff's Motion "must be pursuant to Fed.R.Civ.P. 12(f) [only], because Fed.R.Civ.P. 9(b) . . . contain[s] no provisions relating to striking or modifying pleadings. Accordingly the standards for Fed.R.Civ.P. 12(f) motions to strike will guide the Court." <u>Howmedica Osteonics Corp. v. Zimmer, Inc.</u>, Civ. No. 05-897(WHW), 2006 WL 2583275, at *1 (D.N.J. Sept. 5, 2006); <u>see also</u> <u>Yursik v. Inland Crop Dusters Inc.</u>, No. CV-F-11-01602-LJO-JLT, 2011 WL 5592888, at *3 (E.D. Cal. Nov. 16, 2011) (noting defendants "failed to explain how a motion to strike is the appropriate vehicle for making their Fed.R.Civ.P. 9(b) argument" and instead evaluating the allegations defendants sought to strike under Rule 12(f) because it "permits the Court to 'strike'").[5]

---

[5] Even if the Court were to evaluate Plaintiff's fraud allegations under Federal Rule of Civil Procedure 9(b), it would still find denial of Plaintiff's Motion warranted. Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. (continued)

**B. Discussion**

Plaintiff's Motion is improper under Federal Rule of Civil Procedure 12(f) because "Federal Rule of Civil Procedure 12(f) allows a court to strike pleadings only." Huelbig v. Aurora Loan Servs., LLC, No. 10 Civ. 6215(RJH)(THK), 2011 WL 4348281, at *2 (S.D.N.Y. May 18, 2011), report and recommendation adopted, No. 10 Civ. 6215(RJH)(THK), 2011 WL 4348275 (S.D.N.Y. Sept. 16, 2011); see FED. R. CIV. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."). "Motions, declarations, and affidavits are not pleadings." Huelbig, 2011 WL 4348281, at *2; see FED. R. CIV. P. 7(a) (defining pleadings as the complaint, answer, answer to cross-claims and counterclaims,

---

(continued) CIV. P. 9(b). "However, even though the rule states that conditions of mind may be averred generally, the complaint still must plead the factual basis which gives rise to a strong inference of fraudulent intent." S.E.C. v. Toomey, 866 F. Supp. 719, 726 (S.D.N.Y. 1992) (internal quotation marks and citations omitted). Here, Plaintiff argues that Defendants "are perpetrating fraud upon the Court where the Assignment of Plaintiff's purported Mortgage to the Trust in question was done by tort from a non-existing corporation and therefore, as a matter of law, the Defendant(s) have no Standing to enforce a claim or make motion to this Court for any unenforceable right or claim." (Plaintiff's Motion at 1; id. at 3 (same); Pl.'s Mot. Mem. at 2 (same).) Not only does Plaintiff fail to make this argument with the requisite particularity, but he also fails to "plead the factual basis which gives rise to a strong inference of fraudulent intent" of Defendants. Toomey, 866 F. Supp. at 726 (internal quotation marks and citations omitted); see also id. ("Rule 9(b) does not allow speculation to be the basis of an action for fraud.").

third-party complaint, answer to third-party complaint, and replies when ordered by the Court); see also Shamrock Power Sales, LLC v. Scherer, No. 12 Civ. 8959 (KMK)(JCM), 2016 WL 7647597, at *7 (S.D.N.Y. Dec. 8, 2016), report and recommendation adopted, No. 12-CV-8959 (KMK) (JCM), 2017 WL 57855 (S.D.N.Y. Jan. 4, 2017) ("In sum, a motion to strike is only proper when directed at pleadings within the meaning of Fed. R. Civ. P. 7(a).").

Accordingly, the Court denies Plaintiff's Motion [dkt. no. 40] because it does not comport with the restrictions of Federal Rule of Civil Procedure 12(f). See, e.g., Pakter v. New York City Dept. of Educ., No. 08 Civ. 7673(DAB), 2010 WL 1141128, at *4 (S.D.N.Y., Mar. 22, 2010) (denying the plaintiff's motion to strike defendants' memorandum of law in support of its motion to dismiss because it is not a pleading as required under Federal Rule of Civil Procedure 12(f)); Sierra v. United States, No. 97 CIV. 9329(RWS), 1998 WL 599715, at *9 (S.D.N.Y. Sept. 10, 1998) (denying plaintiff's motion to strike defendant's motion to dismiss because a motion to dismiss is not a pleading).

## III. DEFENDANTS' MOTION

### A. Legal Standard

"On a motion to dismiss for improper venue under Rule 12(b)(3), the burden of proof lies with the plaintiff to show

17

that venue is proper." NextEngine Inc. v. NextEngine, Inc., No.
17-CV-9785 (JPO), 2019 WL 79019, at *1 (S.D.N.Y. Jan. 2, 2019)
(quoting Cartier v. Micha, Inc., No. 06 Civ. 4699(DC), 2007 WL
1187188, at *2 (S.D.N.Y. Apr. 20, 2007)); see also K.A. Holdings
Ltd. of NY v. Chagaris, No. 07-CV-9675, 2009 WL 10685159, at *5
(S.D.N.Y. Nov. 13, 2009) ("On a motion to dismiss for improper
venue, the plaintiff has the burden of establishing that it has
chosen a proper venue."). "Unless the court holds an
evidentiary hearing, however, 'the plaintiff need only make
a prima facie showing of venue.'" NextEngine Inc., 2019 WL
79019, at *1 (citations omitted). In determining whether a
plaintiff has met this burden, courts must view "all facts in
the light most favorable to the non-moving party."
TradeComet.com LLC v. Google, Inc., 647 F.3d 472, 475 (2d Cir.
2011). "A court may consider facts outside of the pleadings
when resolving a motion to dismiss for improper
venue." Peerless Network, Inc. v. Blitz Telecom Consulting,
LLC, No. 17-CV-1725 (JPO), 2018 WL 1478047, at *2 (S.D.N.Y. Mar.
26, 2018). Furthermore, "in a case of multiple claims, proper
venue must be established with respect to each cause of action
asserted." Basile v. Walt Disney Co., 717 F. Supp. 2d 381, 386
(S.D.N.Y. 2010) (citations omitted).

When a case has been brought in an improper district, the
Court may transfer the case "to any district or division in

which it could have been brought" if transfer is "in the interest of justice" pursuant to 28 U.S.C. § 1406(a). Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 435 (2d Cir. 2005) (quoting 28 U.S.C. § 1406(a)). "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." Daniel, 428 F.3d at 435; see also K.A. Holdings Ltd., 2009 WL 10685159, at *5 ("Whether dismissal or transfer is appropriate lies within the sound discretion of the district court.").

28 U.S.C. § 1404(a) states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In determining whether to "transfer venue under § 1404(a), courts inquire, first, 'whether the action could have been brought in the transferee district, and, if yes, [second,] whether transfer would be an appropriate exercise of the Court's discretion.'" Everlast World's Boxing Headquarters Corp. v. Ringside, Inc., 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013) (quoting Robertson v. Cartinhour, No. 10 Civ. 8442(LTS)(HBP), 2011 WL 5175597, at *3 (S.D.N.Y. Oct. 28, 2011)). Under the second step,

> Assessing whether transfer is a valid exercise of
> discretion requires the Court to balance various

factors: (1) the convenience of the witnesses; (2) the
convenience of the parties; (3) the location of
relevant documents and the relative ease of access to
sources of proof; (4) the locus of operative facts;
(5) the availability of process to compel the
attendance of unwilling witnesses; (6) the relative
means of the parties; (7) the forum's familiarity with
the governing law; (8) the weight accorded the
plaintiff's choice of forum; and (9) trial efficiency
and the interests of justice.

Everlast World's Boxing, 928 F. Supp. 2d at 743.

**B. Discussion**

    **1. Venue is Not Proper in the Southern District of New York**

The general venue provision, 28 U.S.C. § 1391(b), provides,

A civil action may be brought in (1) a judicial
district in which any defendant resides, if all
defendants are residents of the State in which the
district is located; (2) a judicial district in which
a substantial part of the events or omissions giving
rise to the claim occurred, or a substantial part of
property that is the subject of the action is
situated; or (3) if there is no district in which an
action may otherwise be brought as provided in this
section, any judicial district in which any defendant
is subject to the court's personal jurisdiction with
respect to such action.

28 U.S.C. § 1391(b)(1)-(3).

    **i. Venue is Not Proper Pursuant to 28 U.S.C. § 1391(b)(1)**

"Whether jurisdiction is based on diversity or a federal

question, . . . [f]or purposes of determining venue [under 28

U.S.C. § 1391(b)(1)], a corporation is deemed to 'reside' in any

judicial district in which it is subject to personal

jurisdiction at the time the action is commenced." Bell v. Classic Auto Group, Inc., No. 04 Civ. 0693(PKC), 2005 WL 659196, at *4 (S.D.N.Y. Mar. 21, 2005) (quoting 28 U.S.C. § 1391(c)); Holmes v. Romeo Enterprises, LLC, No. 15 CV 3915 (VB), 2015 WL 10848308, at *2 (S.D.N.Y. Nov. 2, 2015) ("For venue purposes, a defendant business organization 'resides' in 'any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question.'" (quoting 28 U.S.C. § 1391(c)(2)).

Personal jurisdiction is determined by "a two-step inquiry." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 168 (2d Cir. 2013), reh'g denied, No. 10-1306-CV, 2013 WL 5700963 (2d Cir. Oct. 18, 2013) (citing Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007) and Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). First, courts "look to the law of the forum state to determine whether personal jurisdiction will lie." Id. If personal jurisdiction exists under state law, courts then must consider whether the exercise of personal jurisdiction over an out-of-state defendant "comports with due process protections established under the United States Constitution." Id.

"Personal jurisdiction in New York is established either under CPLR § 301, which allows for 'general' jurisdiction

predicated on a continuous or systematic course of doing business . . . or CPLR § 302, which allows for specific jurisdiction over non-domiciliaries." Bank of Am., N.A. v. Wilmington Tr. FSB, 943 F. Supp. 2d 417, 421-22 (S.D.N.Y. 2013). CPLR § 302 confers specific jurisdiction over an entity where it,

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state . . . ; or 3. commits a tortious act without the state causing injury to person or property within the state . . . if [it] (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or 4. owns, uses or possesses any real property situated within the state.

CPLR § 302(a).

Here, Plaintiff fails to allege that this Court has general personal jurisdiction over Defendants under CPLR § 301 because he fails to allege that Defendants are engaged in a "continuous and systematic course of doing business here [in New York] as to warrant a finding of [their] presence in this jurisdiction." JW Oilfield Equip., LLC v. Commerzbank, AG, 764 F. Supp. 2d 587, 592 (S.D.N.Y. 2011) (internal quotation marks and citations omitted). Plaintiff merely alleges that Defendants "conduct business in this District," which is simply not enough. (Am.

Compl. ¶ 3.)  See Phillips v. Reed Group, Ltd., 955 F. Supp. 2d 201, 226 (S.D.N.Y. 2013) ("Occasional or casual business in New York does not confer general jurisdiction in New York such that a foreign corporation may be sued in New York on causes of action that are wholly unrelated to its activities in New York.").  Plaintiff has failed to allege that Defendants "regularly do[ ] or solicit[ ] business" in New York. Gonsalves-Carvalhal v. Aurora Bank, FSB, No. 12-CV-2790 (MKB), 2014 WL 201502, at *5 (E.D.N.Y. Jan. 16, 2014) (citation omitted) (emphasis added).

Plaintiff further asserts that "Defendants are residents of . . . this District." (Am. Compl. ¶ 3.)  This allegation is also lacking.  In addition to failing to allege that Defendants maintain any sort of business in New York, Plaintiff also fails to allege that Defendants' respective principal places of business, let alone any of their offices, are in New York.  Cf. Bank of Am., N.A., 943 F. Supp. 2d at 423 (finding plaintiff made a prima facie showing that defendant was subject to personal jurisdiction under CPLR § 301 where plaintiff alleged defendant listed a New York office as a proper place of service and that it continued to maintain that office).[6]

---

[6] According to the uncontroverted memorandum of law submitted in support of Defendants' Motion, "U.S. Bank's main office, as set forth in its articles of association, is located in (continued)

Plaintiff also fails to allege that this Court has specific personal jurisdiction over Defendants under CPLR § 302. Plaintiff merely asserts that his claims "relate to Federal Housing Administration's role as Trustee over a trust created under New York law and/or administered at least in part in New York," (Am. Compl. ¶ 3), that "this case involves New York Common Law Trusts," (id. ¶ 1), and that Defendants have violated New York laws, including "New York trust law" and "New York Securities Law," (id. ¶¶ 53, 58(h), 86(F)). These allegations[7] in no way show that Defendants "transact[ed] any business within [New York] or contract[ed] anywhere to supply goods or services in" New York, "commit[ted] a tortious act within" New York, or "commit[ed] a tortious act without [New York] causing injury to person or property within [New York]." CPLR §§ 302(a)(1)-(3).[8]

---

(continued) Cincinnati, Ohio" and "Wells Fargo's main office is located in Sioux Falls, South Dakota." (Defs.' Mot. Mem. at 10.)

[7] Plaintiff's arguments in his opposition to Defendants' Motion that venue in this District is proper because Defendants allegedly committed "violations of Securities Exchange Commission," (Defs.' Mot. Opp. at 1), that "ALL Securitized Trusts are ensconced in Wall Street investment portfolios under New York State Trust Law," (id.), and "that because the Wall Street investment portfolios Plaintiff's Mortgage and Note has been materially altered into Stock-like Bonds and bundled into said portfolios that are owned by Investors from international markets the proper venue and jurisdiction for this action is the Southern District of New York," (id. ¶ 3), are similarly unavailing.

[8] "Essential to the maintenance of a suit against a nondomiciliary under CPLR 302(a)(1) is the existence of some articulable nexus between the business transacted (continued)

Furthermore, the Amended Complaint is devoid of any allegation
that Defendants "own[], use[] or possess[] any real property
situated within" New York.  CPLR § 302(a)(4).  Accordingly,
Plaintiff has failed to make a prima facie showing that
Defendants are subject to personal jurisdiction under New York
law.[9]

_____

(continued) and the cause of action sued upon." Associated
Aviation Underwriters v. DAP Holding, N.V., No. 02 Civ.
7446(HB), 2003 WL 21277148, at *3 (S.D.N.Y. May 30, 2003)
(citation omitted).  Plaintiff has failed to allege such nexus
here.  See id. ("[T]he so-called nexus test, is interpreted very
narrowly by the New York courts." (citation omitted)).
Furthermore, Plaintiff has not alleged any action by Defendants
that could have led them to "foresee being brought into court"
in New York under CPLR § 302(a)(3).  Erickson Prods., Inc. v.
Atherton Tr., No. 12 Civ. 1693(PGG), 2013 WL 1163346, at *3
(S.D.N.Y. Mar. 20, 2013) (citation omitted); see also Gonsalves-
Carvalhal, 2014 WL 201502, at *5 (finding personal jurisdiction
could not be established under CPLR § 302(a)(3) in part because
plaintiff did "not allege that [defendant] should reasonably
expect its actions with respect to the property to have had
consequences in . . . New York").

[9] Even if Plaintiff could establish that Defendants are subject
to personal jurisdiction in New York under New York law, the
assertion of personal jurisdiction over Defendants in the
Southern District of New York would not comport with the
constitutional requirements of due process.  A defendant in a
civil lawsuit is entitled to "due process of law" under the
Fifth and the Fourteenth Amendments of the Constitution, meaning
that such a defendant can only be subject to the personal
jurisdiction of a court when it has "certain minimum contacts
[with the forum state] such that the maintenance of the suit
does not offend traditional notions of fair play and substantial
justice."  Licci, 732 F.3d at 169 (quoting Int'l Shoe, 326 U.S.
at 316).  As held above, Plaintiff failed to allege "'continuous
and systematic' contacts sufficient to establish general
personal jurisdiction, or more limited contacts sufficient to
establish specific personal jurisdiction."  Bank of Am., N.A.,
943 F. Supp. 2d at 423 (citation omitted).  And, as discussed
below, all of the operative events alleged in the (continued)

Because Defendants are not subject to personal jurisdiction in New York, the state in which the Southern District of New York is located, they do not "reside" in New York for venue purposes. See 28 U.S.C. § 1391(c)(2). Accordingly, Plaintiff has not satisfied the precondition to 28 U.S.C. § 1391(b)(1) -- that "all defendants are residents of the State in which the district is located" -- making venue improper under 28 U.S.C. § 1391(b)(1).

### ii. Venue is Not Proper Pursuant to 28 U.S.C. § 1391(b)(2)

Venue in the Southern District of New York is also not proper under § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim" did not occur in the Southern District of New York, nor is "a substantial part of [the] property that is the subject of the action . . . situated" in the Southern District of New York. 28 U.S.C. § 1391(b)(2). Plaintiff does not allege that any acts or omissions relevant to his claims occurred in the Southern District of New York. Plaintiff is a resident of Connecticut. (Am. Compl. ¶ 4). The Property is located in the District of Connecticut. (Id. ¶ 5).

---

(continued) Amended Complaint giving rise to Plaintiff's claims took place in Connecticut. "Without more evidence of contacts with New York, due process prohibits the exercise of personal jurisdiction over" Defendants. Gonsalves-Carvalhal, 2014 WL 201502, at *5 n.6.

The operative events related to the Mortgage Loan as well as the subsequent foreclosure proceeding are all alleged to have occurred in Connecticut.  (See, e.g., id. ¶ 93.)  See also K.A. Holdings Ltd., 2009 WL 10685159, at *9 (finding 28 U.S.C. § 1391(b)(2) did not support venue in this district because plaintiff "committed all of the significant acts and omissions underlying the Plaintiff's claims in the Western District of North Carolina," including "fil[ing] complaints and appear[ing] for hearings" in earlier, related actions in the Western District of North Carolina).

Because no "substantial" events took place in the Southern District of New York, venue cannot be established based on a substantial occurrence pursuant to 28 U.S.C. § 1391(b)(2).  "The fact that this action arises out of a mortgage on a property located in [Bridgeport, Connecticut], outside the [Southern] District of New York, further indicates that venue is not proper in this District."  Gonsalves-Carvalhal, 2014 WL 201502, at *7; Zbitnoff v. Nationstar Deed of Tr., LLC, No. 16-CV-2947 (JMF), 2016 WL 3926468, at *2 (S.D.N.Y. July 18, 2016) (finding transfer to the Northern District of California appropriate where "venue in that District is plainly proper, as the underlying property is in that District and the allegedly improper assignment occurred in that District" (citing 28 U.S.C. § 1391(b))); Adams v. U.S. Bank, NA, No. 12 CV 4640(KAM)(LB),

2013 WL 5437060, at \*5 (E.D.N.Y. Sept. 27, 2013) (dismissing challenges to foreclosure and eviction proceedings and noting "that claims regarding [dismissed plaintiffs'] property should generally be filed in the jurisdiction where the property is located and the claim arose." (citing 28 U.S.C. § 1391(b))).

### iii. Venue is Not Proper Pursuant to 28 U.S.C. § 1391(b)(3)

Venue in the Southern District of New York is not proper under 28 U.S.C. § 1391(b)(3) because there is another district in which this action "may otherwise be brought."  28 U.S.C. § 1391(b)(3).  28 U.S.C. § 1391(b)(3) provides that venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" but only "if there is no district in which an action may otherwise be brought as provided in this section." Id. (emphasis added); see Daniel, 428 F.3d at 434 ("[T]he phrase 'if there is no district in which the action may otherwise be brought' indicates that venue may be based on that subsection only if venue cannot be established in another district pursuant to any other venue provision.").

Here, under 28 U.S.C. § 1391(b)(2), venue would be proper in the District of Connecticut where a substantial part of the acts or omissions that give rise to Plaintiff's claims took place, and where the Property is located.  As such, 28 U.S.C.

28

§ 1391(b)(3) is inapplicable, because, contrary to its requirements, there is another district "in which [the] action may otherwise be brought."  28 U.S.C. § 1391(b)(3); see Daniel, 428 F.3d at 435 (finding that, because plaintiffs could have brought their claim in the Western District of Michigan under 28 U.S.C. § 1391(b)(2), where "a substantial part" of the alleged events giving rise to the claim took place, "they cannot rely on § 1391(b)(3) to support venue in the Western District of New York"); Holmes, 2015 WL 10848308, at *2 ("[B]ecause this action could have been brought in the Northern District of New York, Section 1391(b)(3) does not establish venue in the Southern District of New York."); Safety Software Ltd. v. Rivo Software, Inc., No. 11 Civ. 7433(KBF), 2012 WL 1267889, at *5 (S.D.N.Y. Apr. 11, 2012) (declining to apply 28 U.S.C. § 1391(b)(3) where the action could be brought in another district and noting that "[b]y the plain language of the statute" 28 U.S.C. § 1391(b)(3) "applies only if there is no other district in which the action may be brought").

Accordingly, the Court finds venue does not lie in the Southern District of New York under 28 U.S.C. § 1391(b).[10]

---

[10] Although Plaintiff did not include a violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C §§ 2605-08, as one of his 12 causes of action in the Amended Complaint, because "[Plaintiff] repeats his past allegations and requests for relief," (Defs.' Mot. Mem. at 8 (citing Am. (continued)

## 2. Transfer is Proper Under 28 U.S.C. § 1406(a)[11]

Having determined venue is not proper in the Southern
District of New York, the Court must decide whether to dismiss
the action, or, instead, to transfer it under 28 U.S.C.
§ 1406(a) to the District of Connecticut.  As noted above,
"[t]he Court enjoys 'considerable discretion' in deciding
whether it is in the interest of justice to transfer a
case."  Holmes, 2015 WL 10848308, at *4 (quoting Daniel, 428

---

(continued) Compl. ¶¶ 27-86)), and Plaintiff explicitly mentions
RESPA in the Amended Complaint, (see Am. Compl. ¶ 27), the Court
briefly addresses such a claim here.  RESPA "includes its own
venue provision."  Webb v. Chase Manhattan Mortg. Corp., No. 04
CV 07940(GBD), 2005 WL 106896, at *1 (S.D.N.Y. Jan. 18, 2005).
Venue for a RESPA claim lies in the district in which the
property at issue is located or in which the violation occurred.
See id. ("RESPA expressly provides that either the property
involved or the violation alleged to have occurred must be
located in this District in order for plaintiffs to bring their
claims before this court.").  Because the Property is located in
the District of Connecticut, (Am. Compl. ¶ 5), and the operative
events related to Plaintiff's claims are all alleged to have
occurred in Connecticut, (see, e.g., id. ¶ 93), venue for a
RESPA claim would lie in the District of Connecticut.
Accordingly, venue for any RESPA claim Plaintiff may have
brought is not proper in the Southern District of New York.
[11] The Court transfers the action, notwithstanding Defendants'
argument that the Court lacks personal jurisdiction over them.
(Defs.' Mot. Mem. at 9.)  See Goldlawr, Inc. v. Heiman, 369 U.S.
463, 466 (1962) ("The language of § 1406(a) is amply broad
enough to authorize the transfer of cases, however wrong the
plaintiff may have been in filing his case as to venue, whether
the court in which it was filed had personal jurisdiction over
the defendants or not."); KPMG Consulting, Inc. v. LSQ II, LLC,
No. 01 CIV. 11422(SAS), 2002 WL 1543907, at *1 n.1 (S.D.N.Y.
July 12, 2002) ("The district court has [the] power
to transfer venue even if it lacks personal jurisdiction over
the defendants." (quoting Fort Knox Music, Inc. v. Baptiste, 257
F.3d 108, 112 (2d Cir. 2001)).

F.3d at 435).  "The Court's discretion is informed by 'the
convenience of the parties, ease of access to sources of proof,
and . . . concerns of judicial economy.'"  Id. (citation
omitted).  In addition, the Court may "consider the ultimate
goal of the 'expeditious and orderly adjudication of cases and
controversies on their merits.'"  Id. (quoting Goldlawr, 369
U.S. at 466-67).

As explained above, venue properly lies in the District of
Connecticut.  The Court takes into account "the fact that
dismissal would require pro se Plaintiff to incur additional
filing costs, and re-filing the Amended Complaint in the
appropriate district would delay the proceeding."  Gonsalves-
Carvalhal, 2014 WL 201502, at *7.  The Court also notes that
Defendants "will not be prejudiced by a transfer; in fact, they
moved in the alternative for a transfer to [the District of
Connecticut] pursuant to 28 U.S.C. § 1404(a)."  Insight Data
Corp. v. First Bank Sys., Inc., No. 97 CIV. 4896(MBM), 1998 WL
146689, at *7 (S.D.N.Y. Mar. 25, 1998).  Furthermore, the Court
finds "[t]ransfer of the action, rather than outright dismissal,
will allow the case to be expeditiously adjudicated on its
merits."  Holmes, 2015 WL 10848308, at *4; Int'l Flavors &
Fragrances Inc. v. Van Eeghen Int'l B.V., No. 06 Civ. 490 (JFK),
2006 WL 1876671, at * 8 (S.D.N.Y. July 6, 2006) ("Dismissal is a
harsh remedy that is best avoided when another avenue is

31

open.").  Accordingly, upon concluding that transfer of this action to the District of Connecticut is "in the interests of justice," the Court grants Defendants' Motion [dkt. no. 33], and the action is so transferred pursuant to 28 U.S.C. § 1406(a).

### 3. The Court Need Not Consider 28 U.S.C. § 1404(a)

"Because the Court grants mandatory transfer under Section 1406(a), it need not consider the parties' arguments for discretionary transfer under 28 U.S.C. § 1404." Holmes, 2015 WL 10848308, at *4; see also Wohlbach v. Ziady, No. 17 Civ. 5790 (ER), 2018 WL 3611928, at *3 n.5 (S.D.N.Y. July 27, 2018) ("Since venue is not proper here, transfer pursuant to § 1404(a) is not appropriate."); Kelly-Brown v. Winfrey, No. 11 Civ. 07875(PAC), 2013 WL 6574918, at *1 (S.D.N.Y. Dec. 12, 2013) ("[A transfer pursuant to 28 U.S.C. § 1404(a)] 'presuppose[s]' that . . . [the case] was brought in the correct forum." (citation omitted)).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion [dkt. no. 40] is denied and Defendants' Motion [dkt. no. 33] is granted. Because venue is improper in this District, and because it is "in the interest of justice" to do so, this action is transferred to the District of Connecticut.

SO ORDERED.

Dated:    New York, New York
          June _18_, 2019

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge